LENNON, MURPHY & LENNON, LLC
Attorneys for Defendant
HASSAN ALI RICE EXPORT COMPANY
The GrayBar Building
420 Lexington Avenue, Suite 300
New York, New York 10170
Telephone:    (212) 490-6050
Facsimile:    (212) 490-6070
Charles E. Murphy (CM 2125)
Kevin J. Lennon (KL 5072)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

FLAME MARITIME LIMITED,                      :
                                             :        07 CIV 4426 (WHP)
            Plaintiff,                       :
                                             :        **ECF CASE**
      -against-                              :
                                             :
HASSAN ALI RICE EXPORT COMPANY,              :
                                             :
            Defendant.                       :
-------------------------------------------------------------X


## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE ATTACHMENT

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................................................1

STATEMENT OF FACTS .........................................................................................................2

ARGUMENT..............................................................................................................................5

POINT ONE
IT IS PLAINTIFF'S BURDEN TO PROVE WHY THE ATTACHMENT SHOULD NOT BE
VACATED ................................................................................................................................5

POINT TWO
PLAINTIFF FILED A FRIVOLOUS CLAIM AGAINST DEFENDANT FOR AN IMPROPER
PURPOSE.................................................................................................................................7

POINT THREE
ALTERNATIVELY, PURSUANT TO SUPPLEMENTAL RULE E(6) THE COURT SHOULD
REDUCE THE AMOUNT OF THE ATTACHMENT TO AN AMOUNT COMMENSURATE
WITH PLAINTIFF'S PAKISTANI JUDGMENT........................................................................9

CONCLUSION..........................................................................................................................11

**TABLE OF CASES**

Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd., 460 F.3d 434, 445 (2d Cir. 2006) ....... 5, 7

Bay Casino, LLC v. M/V ROYAL EMPRESS, 1999 U.S. Dist. LEXIS 22357
(S.D.N.Y. 1999) ................................................................................ 7

CBS Corp. v. Wak Orient Power & Light Ltd., 168 F. Supp. 2d 403, 410 (E.D. Pa. 2001) ....... 2

Daeshin Shipping Co. Ltd. v. Meridian Bulk Carriers, Ltd., 2005 U.S. Dist. LEXIS 22409
(S.D.N.Y. 2005) ............................................................................... 10

Dongbu Express Co. v. Navios Corp., 944 F. Supp. 235 (S.D.N.Y. 1996) ..................... 8, 10

Integrated Container Serv., Inc. v. Starlines Container Shipping, Ltd., 476 F. Supp. 119
(S.D.N.Y. 1979) ............................................................................... 7

Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co. v. Navimpex Centrala Navala,
989 F.2d 572, 581 (2d Cir. 1993) ............................................................... 2

Sea Transp. Contractors, Ltd. v. Chemiques du Senegal, 411 F.Supp. 2d 386, 396 (S.D.N.Y.
2006) ................................................................................... 6, 9, 11

## PRELIMINARY STATEMENT

Defendant, HASSAN ALI RICE EXPORT COMPANY (hereinafter "Defendant"), by its undersigned counsel, Lennon, Murphy & Lennon, LLC, submits the within Memorandum of Law in Support of Motion to Vacate, or alternatively, reduce, the maritime attachment obtained by Plaintiff, FLAME MARITIME LIMITED (hereinafter "Plaintiff"), pursuant to Rules E(4)(f) and E(6) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure. Pursuant to an Ex Parte Attachment Order dated May 30, 2007, which authorized the attachment of Defendant's property in an amount up to $150,000.00 plus interest and costs, Plaintiff has purportedly restrained electronic funds transfers either to or from Defendant in the approximate sum of $122,200.00.

For the reasons set forth in the accompanying Declaration of Aga Zafar Ahmed (hereinafter "Ahmed Decl.") and Affidavit of Kevin J. Lennon (hereinafter "Lennon Aff.") and for the reasons explained herein, the Ex Parte Order should be vacated because (1) Plaintiff's underlying claim as alleged in its Verified Complaint lacks sufficient merit such that it may be deemed to be frivolous; (2) Plaintiff has manipulated the maritime attachment remedy authorized by Supplemental Rule B by bringing an excessive claim that is intended to harass and cause financial injury to Defendant, which is an improper practice sufficient to require vacatur; and (3) the amount attached is excessive in that Plaintiff cannot obtain a Judgment in the sum stated in its Verified Complaint.

## STATEMENT OF FACTS

Plaintiff was the owner of the M/V JUNIOR, which vessel Plaintiff chartered to third parties for the carriage of cargo in exchange for payments of hire and freight. *See Verified Complaint at ¶ 3 – Ex. 1 to Lennon Aff.*

The Defendant, a commodities trader engaged in, *inter alia*, rice exporting from Pakistan, chartered Plaintiff's vessel for the carriage of a cargo of rice from Karachi, Pakistan to Moroni in the Cormores Islands pursuant to a charter party dated January 29, 1999. *Id. at ¶ 4-7.*

Certain disputes arose between the parties concerning Plaintiff's allegation that Defendant failed to pay outstanding demurrage in the amount of $59,721.35, together with interest and costs. *Id. at ¶ 9.*

Plaintiff commenced arbitration against Defendant in London and subsequently obtained an award on *December 21, 1999* in the sum of $55,988.77. Said aware also permitted recovery of interest thereon at the rate of 7.5% per annum compounded quarterly from May 21, 1999. *Id. at ¶¶ 10-11.*

Importantly, at no time has Plaintiff ever sought to confirm or enforce the London arbitration award in the United States. Given the age of the 1999 award, Plaintiff is time-barred under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 ("New York Convention") from enforcing the award in the United States. *See* CBS Corp. v. Wak Orient Power & Light Ltd., 168 F. Supp. 2d 403, 410 (E.D. Pa. 2001)(citing 9 U.S.C. § 207 requiring that foreign arbitral awards falling under the New York Convention must be subject of motion for recognition and enforcement within three (3) years of being issued); *see also* Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co. v. Navimpex Centrala Navala, 989 F.2d 572, 581 (2d Cir. 1993).

However, as was its right, Plaintiff sought confirmation of the London arbitration award in Pakistan. As set out in the Ahmed Declaration, in 2000 Plaintiff filed a recognition and enforcement action in Pakistan pursuant to the Arbitration (Protocol and Convention) Act, 1937 which gives effect to the Geneva Convention on the Execution of Foreign Arbitral Awards. *See Ahmed Decl. at ¶3.*

On March 28, 2006 Justice Mrs. Quaisar Iqbal of the High Court of Sindh at Karachi decreed that Plaintiff was entitled to confirmation of the 1999 London arbitration award but in an amount of only $55,988.77 plus £4,800. *See Ahmed Decl. at ¶¶ 4 – 5.* Stated differently, the Pakistani court, the forum voluntarily chosen by Plaintiff in which to seek recognition and enforcement of its 1999 London arbitration award, refused to award the additional interests and costs that have been claimed by the Plaintiff herein.

Subsequently, Plaintiff then filed an Execution Application on March 6, 2007 claiming judgment against Defendant in the sum of US$ 55,988.77 and £4,800 and seeking enforcement of the judgment against Defendant from the Pakistan court. *Id. at ¶ 6.* As explained by Mr. Ahmed, the Execution Application will be fixed on August 7, 2007 when the Pakistani court re-opens following summer vacation. *Id. at ¶ 7.* Defendant has, however, appealed the decision of the Pakistani court, will seek a stay of the Execution Application and will be furnishing a bank guarantee to the Pakistani court to secure the Plaintiff's judgment. *Id. at ¶¶ 8 – 9, 12 – 13.*

At no time did Plaintiff ever appeal the March 2006 Pakistani decree or otherwise seek further relief from the Pakistani court in terms of a judgment entitling it to a greater judgment against Defendant. Mr. Ahmed advises in his Declaration that Plaintiff's efforts in Pakistani have resulted in a final judgment and thus Plaintiff's allegations at ¶14 of its Verified Complaint are simply false. *Id. at ¶¶ 10 – 11.*

3

By purposefully availing itself of the Pakistani legal system to seek recognition and enforcement of its London arbitration award the Plaintiff should not now be permitted to seek security in *excess* of that amount which has been judicially recognized. In essence, the Plaintiff is prosecuting dual recognition and enforcement actions, albeit the subject action is couched within the ambit of a security action only – which was obviously not necessary for jurisdiction since Defendant has appeared and defended itself within the pending Pakistani enforcement action. This is a duplication of efforts and waste of judicial resources. Plaintiff should not be permitted to seek duplicate recovery on the same claim in two different courts. *Id. at ¶ 14.*

In summary, Plaintiff should be estopped from disregarding the Pakistani court's Order in respect of the scope afforded to the 1999 London arbitration award. The allegation made at ¶14 of the Plaintiff's Complaint that its efforts to enforce the 1999 London arbitration award in Pakistan has not resulted in the issuance of Judgment is simply not correct. Rather, as is clearly shown by the March 2006 Pakistani Court Order, the Plaintiff was adjudged to be entitled to enforce the London arbitration award only in the sum total of $55,988.77 plus £4,800.

On May 30, 2007, over one years after the Pakistani court Decree had been issued granting Plaintiff a judgment in the sum of $55,988.77 plus £4,800, and pursuant to the Plaintiff's Complaint, the Plaintiff obtained an Ex Parte Order from the Court authorizing the attachment of up to and including $150,000 of the Plaintiff's property located in the Southern District of New York. *See Ex Parte Order – Ex 2 to Lennon. Aff.*

The Court should vacate the Plaintiff's maritime attachment due to the incorrect and misleading misstatements set forth in the Plaintiff's Complaint by which Plaintiff has inappropriately manipulated the maritime attachment remedy. Further, as Plaintiff will be provided a bank guarantee by Defendant within a few weeks time in order to allow Defendant's

appeal of the Pakistani judgment to proceed, the Plaintiff will be fully secured in Pakistan. That

this will be done is set out on the Declaration of Defendant's Pakistani lawyer Mr. Ahmed.

However, if the Court does not vacate the Plaintiff's maritime attachment then the sum total to

which Plaintiff may lawfully be entitled to attach Defendant's funds in New York should be no

greater than $55,988.77 plus £4,800.

## ARGUMENT

### POINT I

### IT IS PLAINTIFF'S BURDEN TO PROVE
### WHY THE ATTACHMENT SHOULD NOT BE VACATED

A Plaintiff that has obtained and an ex parte Rule B attachment order shoulders the

burden at the post-attachment hearing to prove *inter alia* that "it has a valid prima facie

admiralty claim against the defendant." *See* Aqua Stoli Shipping Ltd. v. Gardner Smith Pty.

Ltd., 460 F.3d 434, 445 (2d Cir. 2006). Supplemental Admiralty Rule E(4)(f) of the Federal

Rules of Civil Procedure provides:

> Whenever property is arrested or attached, any person claiming an interest in it
> shall be entitled to a prompt hearing at which the plaintiff shall be required to
> show why the arrest or attachment should not be vacated or other relief granted
> consistent with these rules.

In such cases, Local Admiralty and Maritime Rule E.1 provides:

> The adversary proceeding following arrest or attachment or garnishment that is
> called for in Supplemental Rule E(4)(f) shall be conducted by a judicial officer
> within three court days, unless otherwise ordered.

It is the plaintiff's burden to prove that the attachment is proper. The Second Circuit

Court of Appeals commented on Rule E(4)(f) in Aqua Stoli and explained the following

standard:

> [A] district court must vacate an attachment if the plaintiff fails to sustain his
> burden of showing that he has satisfied the requirements of Rules B and E. We

5

also believe vacatur is appropriate in other limited circumstances. While, as we have noted, the exact scope of a district court's vacatur power is not before us, we believe that a district court may vacate the attachment if the defendant shows at the Rule E hearing that 1) the defendant is subject to suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain in personam jurisdiction over the defendant in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise. n5.

n.5 Rule E(4)(f) clearly places the burden on the plaintiff to show that an attachment was properly ordered and complied with the requirements of Rule B and E. Although Rule E does not explicitly mention a district court's equitable power to vacate an attachment or who bears such a burden, former Local Rule 12 required the defendant to establish any equitable grounds for vacatur, and we believe that defendants still bear that burden under the Supplemental Rules.

Aqua Stoli, 460 F.3d at 445.

Former Local Rule 12, to which the Second Circuit cited in note 5 of Aqua Stoli,

provides as follows:

Where property is arrested or attached, any person claiming an interest in the property arrested or attached may, upon showing of any improper practice or a manifest want of equity on the part of the plaintiff, be entitled to an order requiring that plaintiff to show cause why the arrest or attachment should not be vacated or other relief granted, consistent with theses rules or the supplemental rules.

Additionally, Supplemental Admiralty Rule E(6) provides that "Whenever security is

taken the court may, on motion and hearing, for good cause shown, reduce the amount of

security given…" As set forth above, the court "has power, pursuant to Supplemental Admiralty

Rule E(6) to reduce the amount of the attachment when good cause is shown." See Sea Transp.

Contractors, Ltd. v. Chemiques du Senegal, 411 F.Supp. 2d 386, 396 (S.D.N.Y. 2006).

## POINT II

### PLAINTIFF FILED A FRIVOLOUS CLAIM
### AGAINST DEFENDANT FOR AN IMPROPER PURPOSE

In Aqua Stoli, the Second Circuit Court of Appeals held that given the exceptional

remedy of maritime attachments, a district court has the inherent authority to vacate an abusive

or otherwise unfair attachment. *Id.* at 442. The Second Circuit so held in the context of praising

Judge Leval's holding in Integrated Container Serv., Inc. v. Starlines Container Shipping, Ltd.,

476 F. Supp. 119 (S.D.N.Y. 1979). The Aqua Stoli court held that "Then-District Judge Leval

astutely noted, however, the possibility of abuse by the attaching party in some circumstances."

Aqua Stoli, 460 F.3d at 442. One such case of abuse occurs when a party who can by "found"

within the Southern District of New York has its property restrained "across the river" in the

Eastern District of New York. In Integrated Container, Judge Leval held that where there is an

"abusive use of the maritime attachment remedy...the courts may easily remedy the situation by

exercising discretion to set aside an unfair attachment." Integrated Container, 476 F.Supp. at

124.

In Bay Casino, LLC v. M/V ROYAL EMPRESS, 1999 U.S. Dist. LEXIS 22357

(S.D.N.Y. 1999), in the context of a defendant's challenge to a maritime attachment, and where

the plaintiff had furnished the court with misleading information regarding projected profits and

actual costs the court held that "plaintiff's lost profits claim is frivolous and, therefore,

improperly included as part of the security." Bay Casino, 1999 U.S. Dist. LEXIS 22357 at *3-4.

The Bay Casino court further held that the claim was frivolous because the very existence of the

damages were uncertain, *i.e.*, where profits were speculative at best, and that recovery was

unwarranted where the plaintiff could not potentially prove loss to a reasonable certainty

standard. "It is well-settled that in an attachment proceeding, the plaintiff need not prove its

7

damages with exactitude but the court must be satisfied that the plaintiff's claims are not frivolous." *Id.* at \*3 citing <u>Dongbu Express Co. v. Navios Corp.</u>, 944 F. Supp. 235 (S.D.N.Y. 1996). Addressing New York law, the court rejected the plaintiff's lost profits claim and partially vacated the attachment because allowing security for a frivolous claim would have put the plaintiff in a better position than it otherwise would have been without the defendant's involvement. The <u>Bay Casino</u> court held as follows:

> Several grounds for such a finding [that the claim was frivolous] were apparent in both the parties' pleadings and in their representations to the Court in the hearing on this matter.
>
> \*\*\*
>
> While the plaintiff has a much lighter burden of proof in this [Rule E(4)(f)] proceeding than at trial, the Court can find no basis in law or in fact to find plaintiff's claim non-frivolous...
>
> Additionally, neither in their pleadings, nor in their representations to this Court has plaintiff provided the Court with an evidentiary basis for historical profits that would indicate plaintiff's claims for lost profits constitutes anything more than bald speculation. Absent this, especially in consideration of the fact that plaintiffs are marketing...a consumer driven, highly volatile venture [,] plaintiff cannot potentially prove loss to a reasonable certainty.
>
> \*\*\*
>
> Defendants cite <u>Rolls Royce v. Fratzis M.</u>, 1996 AMC 393, 396 (S.D.N.Y. 1995) in heralding the Court's responsibility to address the question of:
>
>> In obtaining the attachment...have the plaintiffs engaged in improper practices to such a degree or do the circumstances reveal a want of equity so manifest, as to require the attachment to be vacated in its entirety.
>
> In reducing security, this Court is mindful of its discretion under both law and equity. Since plaintiffs will not be able to prove a claim for lost profits based solely on questionable projections, unsupported by historical profits, the Court declines to secure the claim...Considering the facts at bar, this Court considers that clear guidance in determining plaintiff's lost profits claim is frivolous. Thus, plaintiff's claim for lost profits will not be considered in calculating an appropriate security.

This court is empowered with authority to vacate an attachment which it determines to be frivolous and/or abusive or otherwise unfair. Plaintiff's claim is frivolous and/or abusive or otherwise unfair such that vacatur of its maritime attachment would be appropriate because the Plaintiff has failed to properly inform this Court of the fact that it has a final judgment in Pakistan, that it has failed to appeal the Pakistani Decree by which it obtained judgment, it has sought security through this maritime attachment in an amount vastly exceeding that to which it is lawfully entitled, and it has refused to voluntarily reduce the scope of its attachment thereby necessitating this motion. *See correspondence annexed to Lennon Aff. as Ex. 3.*

The foregoing constitutes an improper manipulation of the Rule B maritime attachment remedy for which the Court should vacate the Plaintiff's maritime attachment.

## POINT III

### ALTERNATIVELY, PURSUANT TO SUPPLEMENTAL RULE E(6) THE COURT SHOULD REDUCE THE AMOUNT OF THE ATTACHMENT TO AN AMOUNT COMMENSURATE WITH PLAINTIFF'S PAKISTANI JUDGMENT

Alternatively, Defendant moves pursuant to Rule E(6) for a reduction of security, *i.e.*, the release of any funds currently held in excess of $55,988.77 plus £4,800. Defendant so moves on the basis that Plaintiff's claim has been improperly exaggerated and seeks to ignore the scope of the Pakistani judgment which it has obtained against the Defendant.

Supplemental Admiralty Rule E(6) provides that "Whenever security is taken the court may, on motion and hearing, for good cause shown, reduce the amount of security given...." As set forth *supra*, this court "has power, pursuant to Supplemental Admiralty Rule E(6) to reduce the amount of the attachment when good cause is shown." *See* Sea Transp. Contractors, Ltd., 411 F. Supp. 2d at 396.

In Dongbu Express Co., Ltd. v. Navios Corp., 944 F. Supp. 235 (S.D.N.Y. 1996), a vessel charterer sued a vessel owner and obtained a maritime attachment in the Southern District of New York in support of an ongoing London arbitration. At the same time, the charterer also brought an attachment action in South Korea. The charterer attached funds in South Korea and in New York. Consequently, the owner moved the district court for a partial release of the funds attached in New York on the basis that the New York attachment was duplicative of the Korean attachment, and that the charterer had become oversecured. Judge Scheindlin agreed that the charterer was oversecured and, therefore, ordered a partial release of the New York attachment pursuant to Rule E(6) because the amount restrained in New York exceeded the difference between charterer's provable damages and the amount of the Korean attachment. In so doing, Judge Scheindlin held that "in an attachment proceeding, the plaintiff need not prove its damages with exactitude" and held further that "*[b]ut the court must be satisfied that plaintiff's claims are not frivolous.*" Dongbu Express, 944 F. Supp at 237 (citations omitted)(emphasis added).

Similarly, in Daeshin Shipping Co. Ltd. v. Meridian Bulk Carriers, Ltd., 2005 U.S. Dist. LEXIS 22409 (S.D.N.Y. 2005) a corporation's motion for reduction in the amount of security under Rule E(4)(f) and E(6) was granted where the plaintiff failed to produce evidence to the court to justify the amount of the attachment. In Daeshin Shipping, Judge Buchwald applied the Dongbu Express standard in the case of a Rule E(6) challenge to a maritime attachment on the basis that the attachment was exaggerated. That is, Judge Buchwald reviewed all of the evidence in the record concerning the plaintiff's claimed damages prior to reducing the amount of the attachment. "As plaintiff has succeeded in attaching the amount of $1,851,016.36, any funds in excess of this amount must be released." Daeshin Shipping, 2005 U.S. Dist, LEXIS at *6.

10

Finally, in <u>Sea Transport Contractors</u>, *supra*, Judge Casey reduced the amount of a maritime attachment to a level that he viewed as reasonable under the circumstances and held as follows:

> A district court has the inherent authority to vacate an attachment "upon a showing of 'any improper practice' or a 'manifest want of equity on the part of the plaintiff.'" Blake Mar., Inc. v. Petrom S.A., 2005 U.S. Dist. LEXIS 26310, No. 05 Civ. 8033, 2005 WL 2875335, at 2 (S.D.N.Y. Oct 31, 2005)(quoting Southern District of New York Former Local Civil Rule 12 (1986)). The Second Circuit has held that the "inherent power to adapt an admiralty rule to the equities of a particular situation is entrusted to the sound discretion of the district judge." <u>Greenwich Marine, Inc. S.S. Alexandria</u>, 339 F.2d 901, 905 (2d Cir. 1965).

<u>Sea Transport Contractors, Ltd.</u>, 411 F.Supp. 2d at 391. Judge Casey found that "good cause" existed per Rule E(6) to reduce the amount of the attachment where the complaint did not accurately allege the amount of damages as evidenced by the parties' underlying contract.

As applied to the facts of the instant case it is beyond any doubt that the greatest sum to which Plaintiff may lawfully be entitled to restrain in New York is $55,988.77 plus £4,800.

## CONCLUSION

For the foregoing reasons, the Court should vacate the attachment and direct the garnishees to release all restrained funds. In the alternative, this Court should reduce the amount of the attachment to a reasonable amount to secure only the extent of the Plaintiff's Pakistani judgment.

11

Dated: July 24, 2007
      New York, NY

Respectfully submitted,

The Defendant,
HASSAN ALI RICE EXPORT COMPANY,

By: _____
Charles E. Murphy (CM 2125)
Kevin J. Lennon (KL 5072)
LENNON MURPHY & LENNON, LLC
The GrayBar Building
420 Lexington Ave., Suite 300
New York, NY 10170
(212) 490-6050 (phone)
(212) 490-6070 (fax)
cem@lenmur.com
kjl@lenmur.com

12