**EXHIBIT 4**

### IN THE HIGH COURT OF SINDH AT KARACHI
(Civil Appellate Jurisdiction)

High Court Appeal No. 205 /2006

Abdullah son of Akbar Ali
Proprietor of Hasan Ali Rice Export Co.
Muslim, adult and having office at
102 Cotton Exchange Building,
I.I. Chundrigar Road,
Karachi------------------------------------------------------------------Appellant

*Versus*

Flame Maritime Limited
Valletta, Malta, a company incorporated
under the laws of Malta through its duly
constituted attorney Syed Shakil Ahmed,
604-5, 6th Floor, Business Centre,
Mumtaz Hasan Road,
Off I.I.Chundrigar Road,
Karachi------------------------------------------------------------------Respondent

### HIGH COURT APPEAL UNDER SECTION 96 CPC READ WITH SECTION 3 OF THE LAW REFORMS ORDINANCE R/W SECTION 15 OF THE ORDINANCE 'X' OF 1980

Being aggrieved and dissatisfied with the judgement dated 23-1-2006 and decree dated 25-03-2006 passed by the Hon'ble Single Judge in Suit No.272 of 2000 [*Flame Maritime Limited vs. M/s Hassan Ali Rice Export Co*] filed under and pursuant to the **Arbitration (Protocol and Convention) Act, 1937**, (hereinafter referred to as the 'Act 1937'), the

appellant above named respectfully prefers this appeal, inter-alia, on the following facts and grounds:-

*Certified copy of the judgement and decree is annexed herewith as annexure "A"*

## QUESTIONS OF LAW

Following significant question of law need determination from this Hon'ble Divisional bench of the High Court -

a) Whether a arbitration award which is not a 'foreign award' within the meaning of section 2(1)(b) of the Act, 1937 can be enforced in Pakistan?

## FACTS

Brief facts of the case are:

1. That the Respondent (as owners) chartered their vessel 'm.v.Junior M' by way of a Charterparty (hereinafter referred to as 'the Charterparty') dated 29-1-1999 to the Appellant for a voyage from 1-2 safe berth(s) Karachi to 1-2 safe berth(s), Antsiranana, Moroni, Mahananga.

2. That according to the terms of the charterparty the cargo was loaded on M.V. Junior M (hereinafter referred to as "the vessel") and a notice of readiness was delivered to the Appellant on February 2, 1999, at 1048 hours.

3. That after discharging initial 2000 metric tons of cargo at the port of Antisirinana, the vessel reached the port of Moroni, Cormores Island, on February 23, 1999. However, the Respondent through its agent at Moroni

informed the Appellant on February 23, 1999 that due to some government restraint/dispute between receiver and Government of Comoros Island, the vessel is not allowed to let anchor the vessel.

4. That a situation had arisen at the nominated port of discharge which virtually resulted in the vessel being locked out/access blocked by the sovereign authorities of the port of discharge. The situation continued beyond a period of 48 hours. As a consequence and in terms of clause 15 of the agreement, the receivers had the option of keeping the vessel waiting until blocked is at an end against paying half demurrage after expiration of the time provided for discharge without risk of being detained by such contingency.

5. That the Appellant was not responsible for the situation that the vessel confronted at the Morni port. Despite best efforts by the parties, there was no change in the situation till March 8. 1999 and the consignment was not discharged. In this circumstance the Appellant, with the object of avoiding delays and expenses, advised the Respondent that the goods be discharged at the ports in Madagascar.

6. That the agents of the Respondent vide its fax of March 9,1999, informed the Appellant that the situation at the Port of Morni is not likely to change within the next 4-5 days.

7. That in response to the earlier fax of the Appellant dated March 8.1999, for the discharge of the goods at another port, the Respondent refused the request on the ground that it will be in breach of the charterparty agreement. This refusal of the Respondent was completely

contrary to the provision of the charterparty as well as the applicable law. The Respondent failed to explain as to how this would amount to a breach of the charterparty.

8. That although the Respondent had refused to discharge the cargo at another port in the neighborhood, it nevertheless offered to discharge the goods as per the request of the Appellant but subject to certain conditions which were nothing but abuse of position of the owner/Respondent in whose possession the consignment of the Appellant was lying.

9. That Appellant by its fax of March 10,1999, vehemently protested against these unreasonable demands of the Respondent and requested it to reconsider the matter.

10. That as the demands of the Respondent were completely unjustified and against the charterparty, the Appellant by its fax messaged of March 12, 1999, drew the Respondent's attention to the fact that under clause 13 of the charterparty three ports were already nominated. It further informed the Respondent that they wish to have 3000 mt of rice discharged at Mahajunga (one of the three ports) and 4000 mt delivered at Tamatave at the rate prescribed in the charterparty for an additional port. The Appellant further informed the Respondent that everything including demurrage will be settled in accordance with the charterparty agreement.

11. That the Appellant reiterated these points in its fax message of March 15, 1999. It also added that after discharging 2000 mt of cargo at Antsiranana, there was a balance of 7000 mt on board and it had not utilized the second port of discharge at Moroni due to the governmental

intervention which constituted force majuere. Thus, there was no question of the Appellant being in breach of the charterparty agreement. It was only in order to mitigate losses that the Appellant had asked the Respondent to sail to Madgascar to discharge the cargo. The Appellant also offered to pay a reasonable compensation for waiting time at Moroni.

12. That contrary to the accommodative approach of the Appellant, the Respondent acted most unreasonably and was determined to exploit the position in which the Appellant had been put into on account of no fault of its own. Thus, the Swedish club sent a message to the Appellant alleging breach of contract. The Respondent also served a legal notice through its Solicitors on March 15, 1999, calling upon the Appellant to nominate its Arbitrator in respect of all and any disputes under the charterparty.

13. That the Swedish Club by their fax of March 17, 1999, threatened the Appellant that if the terms of the proposal of the Respondent are not acceptable to the Appellant then the matter will be proceeded against it as per the notice of march 15, 1999. Another fax dated 16.3.99 by the Swedish Club to the Appellant received on 17.3.99 confronted the Appellant with "take it or leave it" threat.

14. That the Respondent thus, confronted the Appellant with the unenviable situation of either accepting the most unreasonable and extortionate terms under coercion or leave the fate of the cargo to the whims of the Respondent. This was pure and simple blackmail. Under these exceptional circumstance the Respondent was completed and forced against its will to submit to these extortionate demands of the Respondent and

agree to terms and conditions which virtually nullified the charterparty and purportedly engrafted highly one sided terms thereupon.

15. That Respondent, therefore, prepared Addendum No.1 and forwarded it to the Appellant for its signature. As the goods were on board of the Respondent's ship, therefore, the Appellant had no alternative but to submit to these coercive demands. It, therefore, signed the addendum under duress and coercion.

16. That by its fax of May 2, and May 5, 1999, the Appellant informed the Respondent and the shipbroker that the said Addendum was obtained from it under duress and coercion. Thus, it has no force and the Appellant was only subject to the conditions stipulated in the charterparty it self. The only exception was that the detention charges of US $ 4750 per day to which the Appellant had earlier agreed.

17. That despite the submission of the Appellant and their valid objections that there is Arbitrator has no jurisdiction to the dispute arising out of and under the Addendum and therefore, the disputes have to be settled by some competent court of law, the Respondent and the Arbitrator proceeded with the arbitration proceedings.

18. That the Appellant therefore, filed Suit No.1051/1999 in the Hon'ble High Court of Sindh at Karachi for cancellation of the Addendum obtained by way of duress and coercion.

19. That the Arbitrator however, also ignored the fact of filing suit in the competent court of law instituted by the Appellant and therefore, the

Appellant having no other alternative filed their defence/counter claim with the Arbitrator.

20. That the Arbitrator gave an award in favour of the Respondent on 21-12-1999.

21. That thereafter, the Respondent filed the suit out of which this appeal arises, alleging to be a suit under and pursuant to the Arbitration (Protocol & Convention) Act, 1937.

> *Copy of the plaint with annexures thereto is annexed herewith as annexure "B"*

22. That the Appellant filed objections/written statement.

> *Copy of the objections/written statement is annexed herewith as annexure "C"*

23. That after hearing the counsel of the parties, the learned single judge passed the impugned judgment and decree, which is assailed in this appeal.

Hence this appeal, interalia on the following grounds:-

## GROUNDS

I. That the learned single judge erred in law as the impugned judgment is contrary to law and the facts and circumstances of the case, and to the law applicable thereto.

II. That the learned single judge erred in law to allow the suit when the suit does not met the conditions setout under section 2, subsection 1 (b) of the Act and therefore, the award filed is not a "foreign award" under the Act, 1937 and as such suit was liable to be dismissed.

III. That the learned single judge erred in law to allow the suit when the suit itself was liable to be dismissed as the Plaintiff admittedly is a company incorporated in Republic of Malta (*Repubblika ta' Malta*). Under the Notification issued by the late Central Government of British India dated 8-01-1938 (hereinafter referred to as '1938 notification'), Republic of Malta is not mentioned in the said notification and as such Republic of Malta is neither a <u>party</u> to the Convention setforth under the Second Schedule of the Arbitration (Protocol and Convention) Act, 1937, (hereinafter referred to as "Act, 1937") nor the President of Republic of Malta is declared as <u>powers</u> under section 2(1)(b) of the Act, 1937. Thus the award filed is not a "foreign award" within the meaning of section 2 of the Act, 1937.

*Typed copy of the notification is annexed herewith and marked as "D"*

IV. That the learned single judge erred in law to allow the suit when the suit itself merits dismissal as the Defendant is subject to the jurisdiction of Pakistan. The 1938 notification issued by the late Central Government of British India neither declare President of Pakistan as one of the <u>powers</u> within the meaning of section 2(1)(b) of the Act, 1937 nor Pakistan was declared as a party to the Protocol / Convention set forth in the Schedule of the Act, 1937.

V. That the learned single judge failed to appreciate that the suit is liable to be dismissed as the Plaintiff being a corporate entity cannot authorize any person through power of attorney. Neither board resolution nor Articles of Association of the company, which are essential requirements for filing court proceeding are filed.

VI. The learned single judge failed to appreciate that section 2(2) of the Act, 1937 inserted in the statute as the result of the decision of Honorable Supreme Court in Yangtze (London) Ltd. Vs. Barlas Brothers (PLD 1961 SC page 573) (hereinafter referred to as the '*Barlas Brothers case*') does no more than purport to alter the issuing authority of the notification and does not change the contents of the notification issued by the late Government of India.

VII. The said notification does not state that the Central Government of British India/Pakistan has been satisfied that reciprocal provisions have been made is the United Kingdom for enforcement in the United Kingdom of award made in Pakistan.

VIII. The said notification declared United Kingdom and British India as powers which are parties to the said Convention. In effect, at the material time when the said notification was issued, United Kingdom and British India were one power, that is, the King of the United Kingdom, whereas section 2 of the Act, 1937 requires, for enforcement of an award as "foreign award" that one party is subject to the jurisdiction of some other of such power as are parties to the convention.

IX. That clause (c) of section 2 (the terms of which also have to be separately satisfied for an award to be a "foreign award") provides that the award must have been made in a territory of one of the Powers or countries party to the Convention on the Execution of Foreign Arbitral Awards, for which the Federal government, being satisfied that reciprocal arrangements have been made, declare by notification to be a territory to which the

convention applies. No such notification was made in respect of the Republic of Malta.

X. The learned Single Judge failed to appreciate that the award is liable is to be dismissed as the arbitrator committed misconduct.

XI. The learned Single Judge failed to appreciate that the Award on the face of it is contrary to section 7(2) of the 1937 Act, and must be refused to be enforced under Section 7(3) of the Act, as the Arbitrator is guilty of misconduct as much as the award was made on the basis of the Addendum, which Addendum was obtained by way of duress and as such was not the part of the charterparty.\

XII. The learned Single Judge failed to appreciate that the so called Addendum to the charterparty was obtained under duress and the Appellant had no option but to accept the illegal and mala fide demands of the Respondent. That otherwise the charterparty was a complete document which covered all situations which were likely to arise and actually did arise in the course of performance of the contract. The amendment in the charterparty through the Addendum rewrote the existing obligations of the Appellant without conferring any new corresponding benefit or consideration to it. It was illegal, unilateral, devoid of consideration and mutuality and contrary to the charterparty and was obtained under duress and compulsion against the will of the Appellant.

XIII. The learned Single Judge failed to appreciate that the Appellant was ready and willing to pay the demurrage charges in accordance with clause 43 of the charterparty. However, the Respondent failed to submit the demurrage documents. Insofar as the detention charges for delay off the port of Mahajunga were concerned, the Appellant has already paid US $

15,437.50/-. That as no dispute had arisen under the charterparty, no question of arbitration thereunder arose.

XIV. The learned Single Judge failed to appreciate that the jurisdiction of the Arbitrator is limited to '*any dispute arising under this charterparty...*'. The dispute between the Respondent and the Appellant did not arise under the charterparty. It relates to the Addendum. The Addendum created new obligations which were not provided for in the original charterparty. Thus, the arbitration clause contained in the charerparty could not give jurisdiction to any Arbitrator to adjudicate in respect of a dispute which arises under the Addendum.

XV. The learned Single Judge failed to appreciate that the core issue i.e whether the Addendum was a valid document. Secondly, even if it was assumed that the Addendum was a legally binding document, whether the dispute relying entirely upon the Addendum could be referred to the arbitrator.

XVI. The learned Single Judge failed to appreciate that the learned Arbitrator had no jurisdiction to decide whether the Addendum was a valid document. Until that question was determined, the Addendum could not be read into the charterparty including its arbitration clause 54.

XVII. The learned Single Judge failed to appreciate that that the learned Arbitrator had commenced proceedings even before the addendum was brought into existence. The learned Arbitrator could not claim jurisdiction on the basis of a document which was not even in existence when she assumed jurisdiction. The learned arbitrator clearly committed misconduct herself.

XVIII. That the learned Single Judge has failed to properly construe and apply the provisions of section 7 of the 1937 Act, in terms of which the enforcement of the foreign award can be refused by Pakistani Courts. It is submitted that the learned Single Judge has materially erred in his appreciation of the powers and duties of the Court in terms thereof. As a result of this erroneous interpretation of the said section, the learned Single Judge has committed a material error of law and the Impugned Judgment is liable to be set aside.

XIX. That the learned Single Judge failed to appreciate that the Award was not stamped in accordance with the law. The award could not have been enforced on this ground alone.

XX. That the Appellant craves leave to urge additional grounds at the time of the hearing of the Appeal.

### PRAYER

It is, therefore, prayed that this Hon'ble Court may be pleased to, after calling record and proceedings of the suit:-

(i) Allow this appeal and set aside the impugned judgment and decree.

(ii) Any other order that this Hon'ble High Court may deems fit and proper under the circumstances

(iii) Cost of the appeal.

Karachi
Dated                                                                                  Appellant


                                                                    Advocate for the Appellant

## **VERIFICATION**

I, Abdullah son of Akbar Ali, Muslim, adult and resident of Karachi do hereby state and affirm on oath that whatever stated hereinabove is true and correct to the best of my knowledge, belief and information.

Deponent

Identified by me

Regd.Court Clerk

Solemnly affirmed on oath before me by the deponent above named at Karachi on this _____ day of April, 2006 who is identified to me by Mr.Augustin Herry Lobo, registered court clerk of M/s Aga Faquir Mohammad & Co., Advocates who is known to me personally.

COMMISSIONER OF TAKING AFFIDAVITS