LENNON, MURPHY & LENNON, LLC
Attorneys for Defendant
HASSAN ALI RICE EXPORT COMPANY
The GrayBar Building
420 Lexington Avenue, Suite 300
New York, New York 10170
Telephone:    (212) 490-6050
Facsimile:    (212) 490-6070
Charles E. Murphy (CM 2125)
Kevin J. Lennon (KL 5072)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
FLAME MARITIME LIMITED,                                          :
                                                                :    07 CIV 4426 (WHP)
            Plaintiff,                                           :
                                                                :    **ECF CASE**
       -against-                                                 :
                                                                :
HASSAN ALI RICE EXPORT COMPANY,                                 :
                                                                :
            Defendant.                                          :
-----------------------------------------------------------------X

## REPLY MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO VACATE ATTACHMENT

Defendant, HASSAN ALI RICE EXPORT COMPANY (hereinafter "Defendant"), by its

undersigned counsel, Lennon, Murphy & Lennon, LLC, respectfully submits the within Reply

Memorandum of Law in Support of Motion to Vacate, or alternatively, reduce, the maritime

attachment obtained by Plaintiff, FLAME MARITIME LIMITED (hereinafter "Plaintiff"),

pursuant to Rules E(4)(f) and E(6) of the Supplemental Rules for Certain Admiralty and

Maritime Claims of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

For the reasons previously set forth in Defendant's initial memorandum of law, the

accompanying Declaration of Aga Zafar Ahmed, the Affidavit of Kevin J. Lennon, and for the

reasons explained herein, the Ex Parte Order should be vacated pursuant to Supplemental

Admiralty Rule E(4) or, alternatively, reduced pursuant to Supplemental Admiralty Rule E(6).

Most importantly, a comparison of Defendant's initial memorandum with Plaintiff's opposition

memorandum reveals that the parties are in agreement about the important material facts. To

wit, it is undisputed that Plaintiff seeks security for a Pakistani court judgment that partially

confirmed a London arbitration award. It is also undisputed that the Pakistani court rendered

judgment in Plaintiff's favor in the amount of $55,988.77 plus £4,800 (the equivalent of about

$9,550) for a total of approximately $65,539. It is also undisputed that Plaintiff has attached

about $122,000, which is almost twice the amount of the Pakistani judgment.

Against this factual backdrop, it is crystal clear that Plaintiff's demand in its Verified

Complaint of $150,000 plus interest and costs is grossly exaggerated. Similarly, it is clear that

the attachment of $122,000 is excessive and, accordingly, should either be vacated entirely or,

alternatively, reduced to $65,539, *i.e.*, the amount of the Pakistani judgment for which Plaintiff

seeks security. Plaintiff's dissatisfaction with the Pakistani court judgment that denied pre-

judgment interest is of no moment. Similarly, Plaintiff's discussion of the 1999 arbitration

proceedings and arbitration award is irrelevant because Plaintiff has not sought to confirm the

award in the United States. Of note, Plaintiff is time-barred from doing so under the Convention

on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 ("New York

Convention") that carries a three-year statute of limitations. Accordingly, Plaintiff simply cannot

demonstrate its entitlement to an attachment in excess of $65,539 where Defendant has

demonstrated good cause why the attachment should either be vacated or, alternatively, reduced

to an appropriate level.

2

## ARGUMENT

### THE EX PARTE ATTACHMENT ORDER OF $150,000 SHOULD BE EITHER VACATED OR REDUCED BECAUSE PLAINTIFF'S ATTACHMENT IS INTENDED TO SECURE A PAKISTANI JUDGMENT OF $65,539

Defendant stated in its memorandum that "This prejudgment attachment seeks to enforce a decree from the High Court of Sindh at Karachi in Pakistan, confirming an arbitration award granted the plaintiff, Flame Maritime, by an arbitrator based in London." *See Plaintiff's Memorandum of Law at 6.* It is undisputed by the parties that the Pakistani court judgment awarded Plaintiff the amount of $55,988.77 plus £4,800 (the equivalent of about $9,550) for a total of approximately $65,539. Defendant has previously set forth the bases for vacatur in the circumstances where Plaintiff has abused the maritime attachment to obtain an *ex parte* attachment order in the amount of $150,000. Those arguments shall not be repeated here. While the parties may argue over whether the attachment was abusive, even a cursory review of Plaintiff's opposition papers expose that there is no meritorious argument, either in law or in fact, in opposition to reducing the attachment pursuant to Supplemental Admiralty Rule E(6) where Defendant has demonstrated good cause why the attachment should be reduced to $65,539.

Quite recently, Judge Preska examined the standard for reducing an excessive attachment under Rule E(6) in *Transportes Navieros y Terrestes v. Fairmount Heavy Transport N.V.*, 2007 U.S. Dist. LEXIS 50260 (S.D.N.Y. July 6, 2007). In *Transportes Navieros y Terrestes*, the court reduced the level of a maritime attachment from nearly $1,300,000 to $15,000 where Defendant showed good cause why $15,000 was the outside amount for which it might potentially be held liable to plaintiff in the underlying foreign litigation. Specifically, Judge Preska held as follows:

> Alternatively, FHT has moved pursuant to Rule E(6) for a reduction of security,
> i.e., the release of the majority of the $ 1,256,352.84 under attachment. FHT so

3

moves on the basis that TNT's damages "are either non-existent or grossly exaggerated." (See FHT Memo at 22.) Supplemental Admiralty Rule E(6) provides that "[w]henever security is taken the court may, on motion and hearing, for good cause shown, reduce the amount of security given . . . ." Fed. R. Civ. P. Supp. Rule E(6). The district court may determine what "good cause" is as the Court of Appeals has held that "[t]he inherent power to adapt an admiralty rule to the equities of a particular situation is entrusted to the sound discretion of the district judge sitting as an admiralty judge . . . ." *Greenwich Marine, Inc. v. S.S. Alexandra*, 339 F.2d 901, 905 (2d Cir. 1965).

In *Dongbu Express Co. v. Navios Corp.*, 944 F. Supp. 235 (S.D.N.Y. 1996), the vessel charterer sued the vessel owner and obtained a maritime attachment in the Southern District of New York as well as in South Korea in support of a London arbitration. The owner of the vessel moved the district court for a partial release of the funds attached in New York on the basis that the New York attachment was duplicative of the Korean attachment. *Id.* Judge Shira A. Scheindlin found that the charterer was oversecured and ordered a partial release of the New York attachment pursuant to Rule E(6) because the amount restrained in New York exceeded the difference between the charterer's provable damages and the amount of the Korean attachment. *Id.* Judge Scheindlin held that "in an attachment proceeding, the plaintiff need not prove its damages with exactitude" but noted that "the court must be satisfied that plaintiff's claims are not frivolous." *Id.* at 237 (citations omitted).

Similarly, in *Daeshin Shipping Co. Ltd. v. Meridian Bulk Carriers, Ltd.*, No. 05-7173, 2005 U.S. Dist. LEXIS 22409, 2005 WL 2446236 (S.D.N.Y. Oct. 3, 2005), Judge Naomi R. Buchwald granted the defendant's motion for a reduction in the amount of security under Rule E(4)(f) and Rule E(6) where the plaintiff had failed to produce evidence to the court to justify the total amount of the attachment. Judge Buchwald ordered the release of the amount that was in excess of the funds for which there was sufficient evidence to justify attachment. 2005 U.S. Dist. LEXIS 22409, [WL] at *2. *See also Sea Transport Contractors Ltd. v. Industries Chemiques du Senegal*, 411 F. Supp. 2d 386 (S.D.N.Y. 2006) (finding "good cause" pursuant to Rule E(6) to reduce the amount of a maritime attachment where the complaint did not accurately allege the amount of damages as evidenced by the parties' underlying contract).

\* \* \*

The Court accepts that TNT has met the prima facie standard for proving that it has a viable maritime attachment that can withstand a motion to vacate. However, the Court also accepts the undisputed fact that TNT failed to take any step to lift the arrest for some six months. On the basis of this undisputed fact the Court concludes that because TNT failed to act reasonably promptly upon being informed of the arrest of the Vessel by FHT, it failed in its duty to mitigate its damages, including damages it knew it would be exposed to upon its entering into

4

the Con-Dive Charter Party after the arrest had been effected. Thus, FHT has demonstrated good cause for a reduction in the amount of the attachment pursuant to Rule E(6). Accordingly, the order of maritime attachment is modified to reflect the amount for which FHT may be potentially held responsible to TNT, which the Court estimates at $15,000, the outside amount that might be attributable to legal fees required to lift the wrongful arrest.

*Transportes Navieros y Terrestes v. Fairmount Heavy Transport N.V.*, 2007 U.S. Dist. LEXIS 50260 at *20.

The case at bar is analogous to *Transportes Navieros y Terrestes* because this case involves the situation where the defendant has provided undisputed facts tending to prove why plaintiff's alleged damages are grossly excessive. Recall that it is a plaintiff's burden in a maritime attachment action to reasonably estimate its damages so that the court may be satisfied that the claim alleged in the verified complaint is neither frivolous nor overstated. *See supra Dongbu Express Co. v. Navios Corp.*, 944 F. Supp. 235 (S.D.N.Y. 1996); *Daeshin Shipping Co. Ltd. v. Meridian Bulk Carriers, Ltd.*, No. 05-7173, 2005 U.S. Dist. LEXIS 22409, 2005 WL 2446236 (S.D.N.Y. Oct. 3, 2005); and *Sea Transport Contractors Ltd. v. Industries Chemiques du Senegal*, 411 F. Supp. 2d 386 (S.D.N.Y. 2006). The district court is duly empowered to reduce an attachment whenever it determines that a plaintiff's claim is exaggerated or the attachment is excessive. That is, "[t]he inherent power to adapt an admiralty rule to the equities of a particular situation is entrusted to the sound discretion of the district judge sitting as an admiralty judge . . . ." *Greenwich Marine, Inc. v. S.S. Alexandra*, 339 F.2d 901, 905 (2d Cir. 1965). Here, Plaintiff has not reasonably estimated its damages as it was required to do. This is evidenced by the fact that Plaintiff has attached a significantly greater amount than the amount provided for in the Pakistani judgment. The court need only inquire: Would not a more reasonable estimate of defendant's potential liability be $65,539, *i.e.*, the amount already adjudged by the Pakistani court?

5

Moreover, Plaintiff's citation to *American Construction v. Mechanized Construction of Pakistan, Ltd.*, 659 F. Supp. 426 (S.D.N.Y. 1987) is easily distinguishable. *American Construction* was not a maritime attachment case and, therefore, did not address the issue of whether an excessive attachment is subject to vacatur or modification. Instead, the *American Construction* case involved a petition brought in this court to confirm a foreign arbitration award pursuant to the New York Convention. The court merely confirmed the arbitration award, which arbitration award granted interest and costs to the plaintiff. Unlike *American Construction*, the instant case is not one to confirm an arbitration award. Undeniably, it is one to secure a Pakistani court judgment. While it would be interesting to learn why Plaintiff opted to sit on its rights for seven years after the arbitration award was issued in 1999 and to forego the opportunity to seek confirmation in the United States under the New York Convention, the answer is entirely irrelevant for the purposes of this motion. So too is Plaintiff's criticism of Pakistani law. In this regard, Plaintiff's contention that Defendant forced the Plaintiff to seek to have the award confirmed in an Islamic country is unpersuasive. Plaintiff had the opportunity to confirm the award anywhere in the world. It is undisputed that Plaintiff chose Pakistan as the forum to bring its confirmation action.

Likewise, Plaintiff's citation to *Seetransport Wiking Trader Schiffarhtsgellschaft MBH v. Navimpex Centrala Navala*, 29 F.3d 79 (2d Cir. 1994) is inappropriate because the case is distinguishable. *Seetransport Wiking Trader Schiffarhtsgellschaft MBH v. Navimpex Centrala Navala* was not a maritime attachment case. The case did not involve arbitration nor did it involve a petition to confirm an arbitration in a foreign country. The case is not relevant to the issue at hand, which is whether Plaintiff is entitled to a $150,000 attachment order in the

6

circumstances where the Pakistani court rendered a final judgment in Plaintiff's favor in the amount of $65,539.

## CONCLUSION

For the foregoing reasons, the Court should vacate the attachment and direct the garnishees to release all restrained funds. In the alternative, this Court should reduce the amount of the attachment to a reasonable amount to secure only the extent of the Plaintiff's Pakistani judgment.

Dated: August 15, 2007
       New York, NY

Respectfully submitted,

The Defendant,
HASSAN ALI RICE EXPORT COMPANY,

By: _____
Charles E. Murphy (CM 2125)
Kevin J. Lennon (KL 5072)
LENNON MURPHY & LENNON, LLC
The GrayBar Building
420 Lexington Ave., Suite 300
New York, NY 10170
(212) 490-6050 (phone)
(212) 490-6070 (fax)
cem@lenmur.com
kjl@lenmur.com

7

## AFFIRMATION OF SERVICE

I hereby certify that on August 15, 2007, a copy of the foregoing was filed. Notice of this filing will be sent via e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's CM/ECF system.

By: _____

Charles E. Murphy (CM 2125)

8